1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                            AT SEATTLE

9

10   THE ESTATE OF JAMES F. BRUTSCHE,
     et al.,
11                                                    No.  C05-1538Z
                        Plaintiffs,
12                                                    ORDER
     v.
13
     CITY OF FEDERAL WAY, et al.,
14
                        Defendants.

15

16

17         This matter comes before the Court on Defendants' Motion to Dismiss Uninvolved

18   Defendants, docket no. 60.  The Court, having reviewed the briefs in support of and in

19   opposition to these motions, hereby GRANTS IN PART and DENIES IN PART Defendants'

20   Motion to Dismiss, docket no. 60.

21   BACKGROUND

22         A.    Summary of the Facts

23         Plaintiff Leo "Pat" Brutsche and his wife, co-Plaintiff Norma Jean Brutsche have filed

24   on their behalf, and on behalf of their deceased son James Frederick Brutsche, civil rights

25   claims against Defendant City of Federal Way, et. al., including several other Washington

26   cities and police officers.  The claim arises from a police raid on July 10, 2003, of the

ORDER  1–

1   Brutsche property.  First Am. Complaint at ¶ 49, docket no. 2.  James Brutsche resided in a

2   mobile home on his parent's property at the time of the raid.  Id. at ¶ 50.  The property also

3   contained commercial buildings, semi-trailers, vehicles, equipment, and personal belongings

4   of Pat Brutsche.  Id. at ¶ 51.

5       In 2003, Defendants Port of Seattle and the cities of Auburn, Federal Way, Kent,

6   Renton, and Tukwila entered into an agreement to form a SWAT team, entitled the "Valley

7   Special Response Team."  Am. Compl. at ¶ 74; Muenster Aff. Ex. F (Interlocal Cooperative

8   Agreement - Valley Special Response Team), docket no. 70.  On July 10, 2003, the SWAT

9   team launched a raid on the Brutsche family property, based on a search warrant received on

10  July 8, 2003.  Id. at ¶ 87; Muenster Aff. Ex. E (King County District Court Aukeen Division

11  - Search Warrant).  As alleged in the Complaint, Defendants Sjolin, Torre, Adam, Jordan,

12  Renninger, Majack, and Junker entered the home of Jim Brutsche.  Am. Compl. at ¶ 97.

13  Defendant Adam shattered a glass door upon entry.  Id. at ¶ 95.  There were four people

14  inside the mobile home at the time of entry.[1]  Id. at ¶ 98.  Defendants ordered Jim Brutsche

15  to the ground; the shattered glass caused lacerations to his body.  Id. at ¶ 100; see also

16  Muenster Aff. Ex. V (Valley Medical Center Patient Information at 60).  Allegedly, "[o]ne or

17  more of the defendants struck and/or kicked Jim Brutsche as he lay on the floor.  Defendant

18  Majack stood on Jim Brutsche's right hand."  Am. Compl. at ¶ 102–103.  "As Jim Brutsche

19  lay on the floor on his stomach, defendant Junker fired contact taser shots into Jim

20  Brutsche's back."[2]  Id. at ¶ 105; Muenster Aff. Ex. S (Post Warrant/Incident Summary,

21

22  [1] The following people were in the mobile home: Jim Brutsche, Caroline Phillips, Duwayne
    Ulrich, and John Henry Edwards.
23

24  [2] Defendants provide declarations from two of the police officers stating that when Jim
    Brutsche heard the police announcement he ran into the mobile home and barricaded himself.
25  Villa Decl. ¶¶ 8–10, docket no. 61; Majack Decl. ¶ 6, docket no. 62.  Considering this is a
    motion for summary judgment, the facts must be read in the light most favorable to the non-
26  moving party.  Duwayne Ulrich's deposition testimony does not indicate that Brutsche
    attempted to barricade himself in the mobile home, and in fact describes a situation in which

ORDER   2–

1   Officer Junker).  According to Defendant Junker's incident report, Jim Brutsche was

2   combative.  Muenster Aff. Ex. S (Post Warrant/Incident Summary, Officer Junker).  The raid

3   did not recover drugs or drug paraphernalia, and did not confiscate any property.  Id. at Ex.

4   D (Inventory and Return of Search Warrant at 2); Am. Compl. at ¶ 122.

5         After the arrest, Defendants took Jim Brutsche to Valley Medical Center in Renton for

6   treatment.  Am. Compl. at ¶ 123.  Doctors reported numerous lacerations and abrasions to his

7   body and head.  Id. at ¶ 125; see also Muenster Aff. Ex. V (Valley Medical Center Patient

8   Information at 60).  Attached to the Muenster Affidavit are detailed observations from

9   medical personnel as well as pictures of Jim Brutsche's body following the raid.  See

10  Muenster Aff. at Exs. V, W.

11        During the raid, Plaintiff Pat Brutsche arrived at the property and offered the keys to

12  the various buildings on the property to Defendant Sidell.  Leo Brutsche Aff. at ¶ 7, docket

13  no. 69.  Defendant Sidell refused to accept them.  Id.  Following the raid, Leo Brutsche

14  inspected his property, finding that the police had knocked down or shattered many of the

15  doors and windows.  Id. at 8.  Additionally, Plaintiff states that following the raid his

16  relationship with his son, Jim Brutsche deteriorated significantly.  Id. at ¶¶ 9–13.  Jim

17  Brutsche died in July 2004, at the age of 46.[3]  Id. at ¶ 15.

18        Prior to this action, Plaintiffs filed a claim in state court for negligence, conversion,

19  and a taking in regard to the property damage.  Brutsche v. Kent, 134 Wn. App. 1002, No.

20  56620-2-1, 2006 WL 1980216, at *2 (Wash. Ct. App. July 17, 2006); Jolley Decl., Ex. H

21  (Brutsche v. Kent - Appellate Decision), docket no. 63.  The City of Kent and King County

22  were the only defendants in the state action.  Id.  Plaintiffs settled their claims with King

23  County and went to arbitration with the City of Kent.  Id.  After arbitration, Brutsche

24  _____

25  Ulrich was the first person to hear the incoming SWAT team.  Muenster Aff. Ex. Y (Ulrich
    Dep. July 18, 2006 at 15–16).

26

    [3] No documents have explained Jim Brutsche's cause of death.

    ORDER   3–

1    requested a trial de novo.  Id.  The trial court granted summary judgment for the City of Kent

2    and dismissed the case.  Id. at *3.  The Court of Appeals affirmed the trial court's decision

3    on July 17, 2006.  Id. at *13.

4            **B.      Complaint and Motion**

5            Plaintiffs claim, on behalf of their son Jim Brutsche, that Defendants violated his

6    Fourth Amendment right against unreasonable seizures.  Am. Compl. at ¶¶ 134–36.

7    Additionally, Plaintiffs assert, on their own behalf, that they have a Fourth Amendment right

8    "not to have their property subjected to an unreasonable seizure."  Id. at ¶¶ 138–39.  The

9    second and third causes of action claim that the police arrested Jim Brutsche and searched

10   the Brutsche property without probable cause; however, Plaintiffs only assert these claims

11   against Officer David McKenzie and King County.  Id. at ¶¶ 144, 151, 153, 155, 158.  The

12   fourth cause of action is a claim under the Fourteenth Amendment in regard to the alleged

13   damage to the parent/child relationship.  Id. at ¶ 162.  The fifth and sixth causes of action

14   involve alleged violations of the Fourth and Fourteenth Amendments but are directed only

15   against the municipalities and King County.  Id. at ¶¶ 179, 183, 189.  The seventh through

16   eleventh causes of action are personal injury survival claims under RCW 4.20.060, asserted

17   only against the municipalities, and not the individual Defendants.  Id. at ¶¶ 195–215.  The

18   eighth, ninth, and tenth causes of action assert that the Defendants and the Defendant cities,

19   through the doctrine of *respondeat superior*, are liable under the theories of intentional

20   infliction of emotional distress, assault and battery, and false arrest/false imprisonment.  Id.

21   at ¶¶ 199–207.  The eleventh, and last cause of action, includes claims for property damage,

22   trespass, and/or waste, but specifically excludes King County and the City of Kent as

23   defendants from these claims.  Id. at ¶ 215.

24           Defendants' motion requests the dismissal of certain "uninvolved officers" from the

25   case, specifically those officers that did not come into physical contact with Jim Brutsche.

26   Defs.' Mot. Dismiss at 2, docket no. 60.  Though entitled a motion to dismiss, Defendants

ORDER   4–

1   indicate that this is really a summary judgment motion. Id. at 8.  Additionally, Defendants

2   assert that under the doctrine of collateral estoppel the Court should bar Plaintiffs' claims for

3   property damage because Plaintiffs litigated them in a previous lawsuit. Id. at 3.  In specific,

4   Defendants request that the Court dismiss all claims against the following defendants:

5   Officers Torre, Adam, Courtney, Rankin, Sjolin, Jordan, Villa, Sidell and Cline. Id. at 2.

6   During the police raid, the duties of the above officers were as follows:

7          Officer Torre: Detained Ms. Phillips inside the trailer, searched the trailer, and

8   escorted Jim Brutsche to the aid car.

9          Entered residence and encounter a white female moving towards me.  I ordered
       her to the ground but she continued moving towards me.  I grabed [sic] a hold
10      of her and pushed her to the ground in the hallway.  I then moved on and
       continued to clear the Residence.  After the residence was clear I conducted the
11      secondary search with Adam.  I escorted Brutsche to the aid unit then moved
       back with the team . . .

12

13  Jolley Decl., Ex. A. (Post-Incident Summary of Officer Torre).

14         Officer Adam did not state anything about Brutsche in his summary of events, but

15  does specifically indicate that he encountered an injured Jim Brutsche, whether or not

16  Officer Adam entered the trailer following the breach is unknown.  Jolley Decl., Ex. C (Post-

17  Incident Summary of Officer Adam).  Officer Courtney never came into contact with Jim

18  Brutsche but instead was responsible for breaching the doors of several of the buildings on

19  the property.  Jolley Decl., Ex. F (Post-Incident Summary of Officer Courtney).  Officer

20  Rankin drove the armored truck and never entered the residence, nor encountered the

21  suspects, until they were detained at the armored truck.  Jolley Decl., Ex. G (Post-Incident

22  Summary of Officer Rankin).  Officer Sjolin indicated that he was present in the trailer and

23  was busy arresting another suspect.

24         I was #3 on the entry team.  Upon approach I heard Lt. Villa call compromise.
       I then deployed the NFDD outside the trailer.  Adam breached a glass sliding
25      door.  We entered and I saw four suspects inside the house.  I was cuffing one
       suspect.  I put a foot and knee onto the suspect during the cuffing.  I heard a
26      scuffle behind me and turned around.  Two officers were struggling with a
       white male suspect who was on the ground.  He was being told repeatedly to
       put his hands behind his back but did not.  I saw that there was a lot of blood

ORDER  5–

1
2
on the floor under the suspect's head.  The suspect was tazed.  He then
complied by putting his hands behind his back.  He was removed and then
treated by fire.  We then cleared the rest of the property.

3   Jolley Decl., Ex. E (Post-Incident Summary of Officer Sjolin).

4   Officer Jordan wrote that he entered the trailer and took Ms. Phillips into custody.

5   Jolley Decl., Ex. B (Post-Incident Summary of Officer Jordan).  Additionally, he stated that

6   he guarded three suspects.  Id.  Commander Villa was the field commander of this operation.

7   He does not mention any contact with Jim Brutsche.  Jolley Decl., Ex. D (Post-Incident

8   Summary of Officer Villa).  Sergeant Sidell did not come into contact with Jim Brutsche but

9   is joined in this action because of his refusal to use Pat Brutsche's keys to enter the buildings

10   (property damage claim).  Am. Compl. at ¶¶ 110–13; Aff. of Leo Brutsche at ¶ 7.  Detective

11   Cline, a police officer employed by the City of Kent requested the use of the SWAT team to

12   execute the search warrant.

13   **DISCUSSION**

14   **A.    Summary Judgment Standard**

15   Summary judgment is appropriate when the moving party demonstrates that there is

16   no genuine issue as to any material fact and that the movant is entitled to judgment as a

17   matter of law.  FED. R. CIV. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th

18   Cir. 2000).  The party moving for summary judgment "bears the initial responsibility of

19   informing the district court of the basis for its motion, and identifying those portions of 'the

20   pleadings, depositions, answers to interrogatories, and admissions on file, together with the

21   affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

22   fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)).

23   Once the moving party meets its initial responsibility, the burden shifts to the non-moving

24   party to establish that a genuine issue as to any material fact exists.  Matsushita Elec. Indus.

25   Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party "may not

26   rest upon the mere allegations or denials of the adverse party's pleading, but the adverse

party's response, by affidavits or as otherwise provided in this rule, must set forth specific

facts showing that there is a genuine issue for trial.  If the adverse party does not so respond,

summary judgment, if appropriate, shall be entered against the adverse party."  FED. R. CIV.

PRO. 56(e).  The non-moving party must present "significant probative evidence" outside of

the allegations in the pleadings "tending to support its claim or defense."  Intel Corp. v.

Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991); see also Celotex

Corp., 477 U.S. at 324.  The Court assumes that evidence submitted by a party opposing

summary judgment is correct, and all reasonable inferences that may be drawn from that

evidence must be drawn in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986).

**B.     42 U.S.C. § 1983 Claim**

> **1.     Requirements of a § 1983 Claim**

"Section 1983 does not create substantive rights; it merely serves as the procedural

device for enforcing substantive provisions of the Constitution and federal statutes."

Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).  Courts have required plaintiffs to

"plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights

secured by the Constitution or federal statutes."  Gibson v. United States, 781 F.2d 1334,

1338 (9th Cir. 1986).  Damages are available under § 1983 "for actions 'found . . . to have

been violative of constitutional rights and to have caused compensable injury.'"  Carey v.

Piphus, 435 U.S. 247, 255 (1978) (emphasis omitted) (quoting from Wood v. Strickland, 420

U.S. 308, 319 (1975)).  Actual injury must occur for a court to award compensatory

damages.  See Memphis Comty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 (1986) (affirming

that "the abstract value of a constitutional right may not form the basis for § 1983 damages").

"A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of [§] 1983, if [that person] does an affirmative act, participates in another's

ORDER   7–

1   affirmative acts, or omits to perform an act which [that person] is legally required to do that

2   causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743

3   (9th Cir. 1978); see also Redman v. County of San Diego, 942 F.2d 1435, 1439–40 (9th Cir.

4   1991) (en banc).  "The requisite causal connection can be established not only by some kind

5   of direct personal participation in the deprivation, but also by setting in motion a series of

6   acts by others which the actor knows or reasonably should know would cause others to

7   inflict the constitutional injury." Johnson, 588 F.2d at 743–44; see also Gilbrook v. City of

8   Westminster, 177 F.3d 839, 854 (9th Cir. 1999).  When making a determination about

9   causation, the court "must take a very individualized approach which accounts for the duties,

10  discretion, and means of each defendant." Leer v. Murphy, 844 F.2d 628, 633–34 (9th Cir.

11  1988).

12                  **2.      Fourth Amendment Excessive Force Claim**

13          Defendants' motion requests the dismissal of the fourth amendment excessive force

14  claim for those officers who did not participate in taking Jim Brutsche into custody.  Defs.'

15  Mot. at 8.  There are two categories of police officers included in the "uninvolved officers."

16  The first are the officers who were in the trailer but did not physically come into contact with

17  Jim Brutsche.[4]  The second are the officers that were present at the Brutsche property but

18  never entered the trailer.[5]  Plaintiffs argue that both these categories of Defendants are liable

19  because 1) they failed to intervene, 2) they were integral participants in the SWAT raid and

20  therefore share the liability, and 3) they conspired to violate Jim Brutsche's civil rights.  Pls.'

21  Resp. at 14–18, docket no. 68.

22

23

24  _____

        [4] The officers in the first category include Officers Torre, Jordan, Adam, and Sjolin.

25
        [5] The officers in the second category include Officers Rankin, Sidell, Villa, and Courtney.
26  Officer Cline also falls within this category, though it is unclear if he was present at the
    Brutsche property.

    ORDER   8–

**a.      Failure to Intervene (by officers present in the trailer)**

Plaintiffs assert that liability attaches to those officers that were present in the trailer at the time the alleged excessive force occurred.  Pls.' Resp. at 14.  These officers include: Officers Torre, Jordan, Adam, and Sjolin.  Id.  The Supreme Court determined that officers do have a  duty to protect "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety. . . . [An] affirmative duty to protect arises . . . from the limitation which [the state] has imposed on his freedom to act on his own behalf."  United States v. Reese, 2 F.3d 870, 887–88 (9th Cir. 1993) (citing DeShaney v. Winnebago County Dep't. of Soc. Servs., 489 U.S. 189, 199–200, (1989)).  A "special relationship" which includes a duty to protect arises when the state has taken the person into custody.  Id. at 888; Ting v. United States, 927 F.2d 1504, 1511 (9th Cir. 1991).  In the Rodney King case the Ninth Circuit acknowledged that "[p]ursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."  United States v. Koon, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994) vacated in part on other grounds by Koon v. United States, 518 U.S. 81 (1996).  Citing to several out of circuit cases, the Ninth Circuit noted that:

> the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows. Thus an officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights.

Id.; see also Reese, 2 F.3d at 890 (determining that a defendant Officer was liable for not intervening when reasonable steps could have prevented the excessive force, and when the defendant "deliberately chose not to act").

Relying on Ting, Defendants assert that the "bystanding officers' duty to protect is operative only when the officer is aware of a specific risk of harm to the plaintiff and has time and opportunity to intervene."  Defs.' Reply at 5, docket no. 72 (citing Ting, 927 F.2d

ORDER   9–

at 1511–12).  In <u>Ting</u>, a SWAT team raided the residence of Ronald Ting as part of a

narcotics bust.  927 F.2d at 1508.  Upon entry into the residence four of the officers

encountered Mr. Ting, completely naked, and aiming a gun at them.  <u>Id.</u>  Agent Burns came

in through a different door, aimed a 12-gauge Remington shotgun at Ting, and ordered him

to drop the gun.  <u>Id.</u>  Burns removed Mr. Ting's gun and subdued him on the floor.  <u>Id.</u>  At

some point Mr. Ting got free and lunged for a dressing area on the other side of the room,

Burns fired his shotgun at Mr. Ting, injuring him in his shoulder and leaving him a

quadriplegic.  <u>Id.</u>  Similar to the Brutsche's in the present case, Mr. Ting alleged that the

non-shooting agents were liable because they did not intervene to prevent his injuries.  <u>Id.</u> at

1511.  The district court granted the defendants' motion for summary judgment and

dismissed those defendants.  <u>Id.</u>  The Ninth Circuit affirmed the decision of the district court,

finding that "there is no evidence that the four non-shooting agents knew that Burns would

hurt or shoot Ting" and that the "agents were positioned around the room away from Burns

and Ting and were thus physically incapable of preventing the incidents surrounding the

shooting, all of which transpired in a matter of seconds."  <u>Id.</u> at 1511–12.

Defendants rely on the <u>Ting</u> case, asserting that "none of the individual Defendants

had opportunity to intervene."  Defs.' Reply at 5.  However, the facts do not appear

sufficiently analogous.  Unlike in <u>Ting</u>, where Agent Burns' actions were rapid and left no

time for intervention, the amount of time that elapsed in the present case is less clear.  In his

deposition, Duwayne Ulrich, a friend of Jim Brutsche and one of the four people arrested in

the trailer, testified that he saw Jim Brutsche tazed on several occasions and heard what he

thought was the butt of a gun hit Jim Brutsche.  Muenster Aff., Ex. Y (Ulrich Dep. at

36–38).  Defendants contend that the actions of the officers allegedly beating Jim Brutsche

were "quick" and "non-repetitive," but provide no evidentiary support for this assertion.

Defs.' Reply at 6.  According to the incident reports of Officers Torre and Jordan, they were

busy taking the female suspect, Ms. Phillips, into custody at the time the officers allegedly

ORDER   10–

1    tazed Jim Brutsche.  Muenster Aff., Exs. M, N (Post-Incident Summary of Officers Torre &

2    Jordan).  However, as Mr. Ulrich testified, the officers that took Ms. Phillips into custody

3    did so in the same room in the mobile home, and therefore may have witnessed the alleged

4    abuse.  Muenster Aff., Ex. Y (Ulrich Dep. at 32).  Considering that the Court must look at

5    the facts in the light most favorable to the non-moving party, Plaintiffs have raised a genuine

6    issue of material fact.

7         As to the officers in the room, Officers Torre, Jordan, and Sjolin, who may have had

8    the opportunity to intervene, the Court DENIES Defendants' Motion to Dismiss in relation to

9    Plaintiffs' Fourth Amendment claim.

10                     **b.     Failure to Intervene (by officers not in the trailer)**

11        However, Plaintiffs also assert liability for officers not in the room, specifically

12   Officers Adam, Rankin, Sidell, Villa, Cline, and Courtney.  Plaintiffs proffer no proof to

13   show that Officers Adam, Rankin, Sidell, Villa, Cline, or Courtney were aware of what was

14   occurring in the trailer or that those officers had the opportunity to intervene, especially

15   considering that they were not present in the trailer at the time of the alleged abuse.

16   Therefore, the Court GRANTS Defendants' Motion to Dismiss as it relates to Plaintiffs'

17   Fourth Amendment claims of excessive force and unreasonable search and seizure.  The

18   Court DISMISSES Officers Adam, Rankin, Sidell, Villa, Cline, and Courtney from

19   Plaintiffs' first cause of action.

20                     **c.     Liability Due to Participation in SWAT Team**

21        Plaintiffs argue that the members of the SWAT team that did not personally come in

22   contact with Jim Brutsche are still liable because they were "integral participants" in the

23   police raid.  Pls.' Resp. at 15.  Plaintiffs rely primarily on Boyd v. Benton, a case involving a

24   SWAT team that deployed a flash-bang device when executing a raid.  374 F.3d 773, 777

25   (9th Cir. 2004).  The SWAT team in Boyd used the flash-bang device upon entry into an

26   apartment in which several people were sleeping, including Boyd, whom they injured when

ORDER   11–

1   the device ignited.  Id. at 778.  Prior to the raid, the SWAT team supervisor created the raid

2   plan, including what devices they would deploy and how the raid would commence.  Id. at

3   777.  "Every CPD officer involved in the operation knew of the plan to use the flash-bang,

4   did not object to that plan, and actively participated in its operation."  Id.  Boyd brought a

5   civil rights action alleging that the use of the device constituted excessive force and that all

6   of the participants in the SWAT team were liable for the violation.  Id. at 780.  The Ninth

7   Circuit determined that "each officer involved in the search operation was an 'integral

8   participant.'"  Id.  The SWAT team was standing behind the officer who deployed the

9   device, they were all part of the operation, and they were all aware of the decision to use the

10  flash-bang device.  Id.  Based on the analysis in Boyd, Plaintiffs contend that the officers, as

11  members of a SWAT team in which they all actively participated, could be held liable as

12  integral participants.  See Pls.' Resp. at 16.

13      However, Boyd is distinguishable because "[i]ntegral participation rather than simple

14  participation in a team effort is required for liability under § 1983."  Defs.' Reply at 7 (citing

15  Chuman v. Wright, 76 F.3d 292, 294 (9th Cir. 1996)).  The Ninth Circuit in Chuman refused

16  to allow liability based on a "team effort" theory, but rather stressed that earlier case law

17  (Melear v. Spears, 862 F.2d 1177 (5th Cir. 1989)) required that there be integral participation

18  by the defendant.  Chuman, 76 F.3d at 295.[6]

19      > The underlying problem with a 'team effort' theory is that it is an improper
         > alternative grounds for liability.  It removes individual liability as the issue and
20       > allows a jury to find a defendant liable on the ground that even if the defendant
         > had no role in the unlawful conduct, he would nonetheless be guilty if the
21       > conduct was the result of a 'team effort.'

22

23

24  ───────────────

    [6]  The Ninth Circuit in Chuman reviewed a district court's jury instruction.  The facts in
25  Chuman are not clearly laid out.  What is clear is that the case involved a SWAT team raid in
    which no evidence was found nor arrests made.  Chuman, 76 F.3d at 293.  The appeal is
26  from a jury trial where two of the officers, Mark Fronterotta and Craig Wright, were found
    guilty of civil rights violations.  Id. at 293–94.

ORDER   12–

1   Id.  The Ninth Circuit in Chuman concluded that the jury instruction, which allowed liability

2   to extend to all of the team members regardless of who ultimately inflicted the injuries, was

3   erroneous.  Id. at 294–95.

4        The situation in the present case is not similar to the one in Boyd.  In Boyd, every

5   member of the SWAT team was aware of the deployment of the flash-bang device.  Boyd,

6   374 F.3d at 780.  They all had the opportunity to object or express concerns over the safety

7   of the device.  Id.  Additionally, they were all present when the device was detonated.  In the

8   present case, there is no evidence that the Defendants discussed the use of tasers, or other

9   forms of significant force prior to entering the trailer.  Additionally, not all of the Defendants

10  were present when the officers allegedly abused Jim Brutsche.  The plan was to raid the

11  Brutsche estate, not to use excessive force.  Holding all of the SWAT members liable is more

12  analogous to the "team effort" theory discarded in Chuman than to the "integral participant"

13  theory applied in Boyd.  Accordingly, Plaintiff's "integral participant" fails.

### d.    § 1983 Conspiracy Liability

15       Though Plaintiffs state in their Response that the police officers conspired to assault

16  Jim Brutsche, they provide no evidence of this agreement.  See Pls.' Resp. at 17.   Plaintiffs

17  claim to have provided "direct evidence of the agreement of the defendants to assault Jim

18  Brutsche's home and use force against him," but they do not cite in their brief to any proof

19  of such agreement.  Admittedly an agreement existed to raid Jim Brutsche's home; however,

20  there is no evidence that an agreement to utilize excessive force existed.  See Muenster Aff.,

21  Ex. I (Valley Special Response Operations Order) (filed under seal).  The non-moving party

22  must present "significant probative evidence" outside of the allegations in the pleadings

23  "tending to support its claim or defense."  Intel Corp. v. Hartford Accident & Indem. Co.,

24  952 F.2d 1551, 1558 (9th Cir. 1991); see also Celotex Corp., 477 U.S. at 324.  Plaintiffs

25  have provided neither circumstantial nor direct evidence from which to even infer a police

26

1    conspiracy to engage in excessive force.  Therefore, Plaintiff's conspiracy liability argument

2    also fails.

3                    **3.       Substantive Due Process Claim under the Fourteenth Amendment**

4            Plaintiffs allege in their fourth cause of action that Defendants deprived Jim Brutsche,

5    as well as his parents, of their federally protected rights to "love, companionship and

6    society."  Compl. at ¶ 162, 165, 167.  The due process clause of the Fourteenth Amendment

7    protects this right.  See Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986); see

8    also Kelson v. City of Springfield, 767 F.2d 651, 655 (9th Cir. 1985) ("a parent has a

9    constitutionally protected liberty interest in the companionship and society of his or her

10   child").  Though the Ninth Circuit has not directly ruled that parents have a protected interest

11   in their relationship with an adult child, they have implicitly recognized this right.  Loomis v.

12   City of Puyallup Police Dep't, No. C02-5417RJB, 2005 WL 1036445, at *5 (W.D. Wash.

13   May 3, 2005) (citing Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th

14   Cir. 1998)).

15           Defendants assert that Plaintiffs must prove that the "uninvolved" officers acted with

16   "deliberate indifference."  Defs.' Mot. at 10 (citing Lewis v. Sacramento County, 98 F.3d

17   434, 441 (9th Cir. 1996) rev'd, County of Sacramento v. Lewis, 523 U.S. 833, 854 (1998)).[7]

18   However, the Ninth Circuit's holding in Lewis, specifically the application of a "deliberate

19   indifference" standard was reversed by the Supreme Court.[8]  The Supreme Court instead held

20   that in the context of a high speed chase "only a purpose to cause harm unrelated to the

21   legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the

22

23   [7] Lewis involved a high speed chase by police of two boys on a motorcycle.  At one point,
     the motorcycle pulled over, however one of the police vehicles did not have enough distance
24   to stop in time, and it ran into Lewis, a sixteen year old passenger on the motorcycle.  Lewis
     was pronounced dead at the scene.  Lewis v. Sacramento County, 98 F.3d at 437.

25
     [8] Defendants note that the Supreme Court "reversed on other grounds."  Defs.' Mot. at 10.
26   However, the Supreme Court did throw out the "deliberate indifference" standard, which the
     Ninth Circuit has since recognized.  See Moreland, 159 F.3d at 372 (9th Cir. 1998).

ORDER   14–

1    conscience, necessary for a due process violation." <u>County of Sacramento v. Lewis</u>, 523

2    U.S. at 834.  Extending this rule, the Ninth Circuit in <u>Moreland</u>, "held that the critical

3    question is determining the appropriate standard of culpability in whether the circumstances

4    allowed the state actors time to fully consider the potential consequences of their conduct."

5    <u>Hos v. Pooler</u>, No. CV-04-5123-RHW, 2006 WL 196291, at *3 (E.D. Wash. Jan. 23, 2006)

6    (citing <u>Moreland</u>, 159 F.3d at 373)).[9]

7          Plaintiffs claim that the raid caused Jim Brutsche's attitude to change towards them,

8    violating their due process rights to "love, companionship, and society."

9          (10)  Prior to the raid, my wife and I had a good relationship with our son.  He
           was a decent, kind man.  Prior to the raid, he listened to me.  He would do the
10         things that I asked him to do.

11         (11)  What happened to Jim during the raid reversed everything.  I had taught
           him that his home was a safe place.  I had taught him to respect the police, and
12         he did so until the SWAT raid.

13         (12) The raid caused him to doubt what I had taught him.  After the raid, Jim
           did not listen to me.  He would not do things I asked him to do.  He became
14         isolated and withdrawn.  It became difficult to talk with him.  Before the raid,
           Jim frequently visited my wife and I at our home.  After the raid, he seldom
15         visited us.

16   Brutsche Aff. at 3.[10]

17         Plaintiffs are unable to satisfy the standard the Supreme Court in <u>County of</u>

18   <u>Sacramento v. Lewis</u> created: that there must be "a purpose to cause harm unrelated to the

19   legitimate object of arrest." <u>County of Sacramento v. Lewis</u>, 523 U.S. at 836.  Plaintiffs

20   assert that they are not "required to show that the defendants had an intent to deprive the

21   plaintiffs of their familial association rights in order to state a cause of action."  Pls.' Resp. at

22

23   [9] In <u>Moreland</u>, police officers responded to a call that there was a gun fight in a Las Vegas
     parking lot.  When they arrived they found a man firing a semiautomatic handgun at
24   individuals who were returning fire.  Innocent bystanders were also trapped in the parking
     lot.  The police officers shot at the man who was firing.  This man was later identified as
25   Damon Douglas.  It is unclear whether Douglas was the shooter or an innocent bystander.
     <u>Moreland</u>, 159 F.3d at 368.
26

     [10] Plaintiffs do not allege that Jim Brutsche died as a result of the police misconduct.

     ORDER   15–

1  21 (citing <u>Ovando</u>, 92 F. Supp. 2d 1011, at 1019 n.8 (C.D. Cal. 2000)).  Plaintiffs fail to

2  recognize that the district court in <u>Ovando</u> determined that plaintiffs did not need to prove

3  intent to survive a Rule 12(b)(6) motion, not a summary judgment motion.  <u>Ovando</u>, 92 F.

4  Supp. 2d at 1015, 1019 n.8.  Plaintiffs have not cited to any evidence to show that the

5  officers who did not personally touch Jim Brutsche, the "uninvolved officers," had any

6  purpose to cause harm, especially because they did not cause any physical harm to Jim

7  Brutsche.  Additionally, it is hard to imagine that these uninvolved officers could have

8  anticipated the change in relationship that resulted from the police raid, especially

9  considering that Jim Brutsche was an adult.  Plaintiffs fail to proffer any proof of intent to

10  substantiate their claim for deprivation of "love, companionship, and society" under the

11  Fourteenth Amendment.

12       Accordingly, the Court GRANTS Defendants' Motion to Dismiss the uninvolved

13  officers from Plaintiffs Leo and Norma Brutsche's fourth cause of action, the Fourteenth

14  Amendment due process claims.  Plaintiffs do not discuss the Estate of Jim Brutsche's due

15  process claim, nor do they contend in their response brief that parents can vicariously assert

16  this claim.  The Court GRANTS Defendants' Motion to Dismiss regarding Plaintiff Estate of

17  Jim Brutsche's claims under the Fourteenth Amendments.  The Court DISMISSES Officers

18  Adam, Rankin, Sidell, Villa, Cline, and Courtney from the fourth cause of action, the

19  Fourteenth Amendment due process claims.

20                    **4.       Assault and Infliction of Emotional Distress**

21       Defendants contend that the Court should dismiss the assault and intentional infliction

22  of emotional distress claims as they pertain to the individual Defendants, Plaintiffs eighth

23  and ninth causes of action.  Defs.' Mot. at 10.  Plaintiffs point out in their Response that they

24  only brought these claims against the Defendant cities, port, and county, not the individual

25  Defendants.  Pls.' Resp. at 21 (citing Compl. at ¶¶ 203, 206).  Therefore, the Court

26

ORDER   16–

1   STRIKES as MOOT Defendants' Motion to Dismiss the claims for assault and infliction of

2   emotional distress as they relate to all of the individual defendants.

3       **C.      Collateral Estoppel**

4       In their motion, Defendants assert that Plaintiffs are collaterally estopped from

5   bringing claims regarding property damage in this action. Defs.' Mot. at 11.[11]  "The general

6   term res judicata encompasses claim preclusion, (often itself entitled res judicata) and issue

7   preclusion, also known as collateral estoppel." Shoemaker v. City of Bremerton, 109 Wn.2d

8   504, 507 (1987).  The Washington State Supreme Court has stressed the importance of

9   "preserving the distinction between these two defenses." Hisle v. Todd Pacific Ship Yards

10  Corp., 151 Wn.2d 853, 865 n.9 (2004).  "The doctrine of collateral estoppel differs from res

11  judicata in that, instead of preventing a second assertion of the same claim or cause of action,

12  it prevents a second litigation of issues between the parties, even though a different claim or

13  cause of action is asserted." Seattle-First Nat'l Bank v. Kawachi, 91 Wn.2d 223, 225–26

14  (1978).  "In the instance of claim preclusion, all issues which might have been raised and

15  determined are precluded.  In the case of issue preclusion, only those issues actually litigated

16  and necessarily determined are precluded." Shoemaker, 109 Wn.2d at 507 (citing Seattle-

17  First Nat'l Bank, 91 Wn.2d at 228).

18          **1.      Standard for Collateral Estoppel**

19      Collateral estoppel precludes the "retrial of issues decided in a prior action." Seattle-

20  First Nat'l Bank v. Kawachi, 91 Wn.2d at 228.  Under this doctrine, if a plaintiff asserts a

21  new, distinct claim, "it is still possible that an individual issue will be precluded."

22  _____

23  [11] However, in the Reply brief, Defendants instead assert that the "Plaintiffs' property
    damage claim should be barred by res judicata." Reply at 9.  It is unclear whether

24  Defendants are asserting a new theory by which the Court should dismiss the property
    damage claims, or if the Defendants are simply substituting the theory of res judicata for

25  collateral estoppel.  Since Defendants assert the defense of res judicata for the first time in
    their Reply brief, the theory will not be considered. See Okanogan Highlands Alliance v.

26  Williams, 236 F.3d 468, 478 n.4 (9th Cir. 2000) (refusing to address an argument raised for
    the first time in a reply brief).

1  <u>Shoemaker</u>, 109 Wn.2d at 507.  "Collateral estoppel applies only to issues which were

2  actually decided in prior litigation and does not operate as a bar to matters which could have

3  then been raised but were not."  <u>Davis v. Nelson</u>, 9 Wn. App. 864, 874 (1973).  The elements

4  of collateral estoppel are as follows:

5        (1) identical issues; (2) a final judgment on the merits; (3) the party against
       whom the plea is asserted must have been a party to or in privity with a party to
6        the prior adjudication; and (4) application of the doctrine must not work an
       injustice on the party against whom the doctrine is to be applied.

7
   <u>Malland v. Dep't of Retirement Sys.</u>, 103 Wn.2d 484, 489 (1985).  "A court may apply
8
   collateral estoppel only if all four elements are met."  <u>Id.</u>  "In addition, the issue to be
9
   precluded must have been actually litigated and necessarily determined in the prior action."
10
   <u>Shoemaker</u>, 109 Wn.2d at 508.
11
                    **2.      Identical Issues**
12
           Plaintiffs argue that the issues litigated in state court are different from the issue that
13
   they now assert in federal court.  Pls.' Resp. at 22.  In <u>Brutsche v. Kent</u>, Plaintiffs alleged
14
   negligence, takings, and trespass against the City of Kent and King County.  134 Wn. App.
15
   1002, No. 56620-2-1, 2006 WL 1980216, at *2 (Wash. Ct. App. July 17, 2006); Jolley Decl.,
16
   Ex. H (<u>Brutsche v. Kent</u> - Appellate Decision).  In the state court action, the court granted
17
   summary judgment for the defendants finding that the actions of the defendants did not
18
   constitute a taking, nor were the actions negligent.  <u>Id.</u> at *3–4.  Additionally, the court
19
   determined that the defendants were not liable in trespass for damage to the property because
20
   Plaintiff failed to prove that the conduct was tortious.  <u>Id.</u> at *4–5.
21
           Plaintiffs contend that because they assert a claim under the Fourth Amendment
22
   "based upon the unreasonable manner in which the warrant was executed" the claims are not
23
   identical.  Pls.' Resp. at 23.  However, this argument ignores the purpose of collateral
24
   estoppel: "it prevents a second litigation of *issues* between the parties, even though a
25
   *different claim* or cause of action is asserted."  <u>Seattle-First Nat'l Bank</u>, 91 Wn.2d at 225–26
26
   (emphasis added).  "Under collateral estoppel, once a court decides an issue of fact or law

   ORDER   18–

1    necessary to its judgment, that decision precludes relitigation of the same issue on a different

2    cause of action between the same parties." <u>Kremer v. Chemical Const. Corp.</u>, 456 U.S. 461,

3    467 n.6 (1982).

4         Plaintiffs assert in this action that the police executed the warrant in an "unreasonable

5    manner." Pls.' Resp. at 22. Plaintiffs argue, based on <u>Boyd v. Benton County</u>, that "[t]he

6    execution of a warrant in an unreasonable manner, regardless of probable cause, triggers

7    Fourth Amendment liability." Pls.' Resp. at 22 (citing <u>Boyd v. Benton County</u>, 374 F.3d

8    733, 779–80 (9th Cir. 2004)) (recognizing that "the use of excessive force during a search

9    makes that search unreasonable under the Fourth Amendment."). The state court has already

10   determined that the Defendants did not act in an unreasonable manner. Specifically, the

11   Court of Appeals concluded that Plaintiffs proffered no evidence to support the contention

12   that the police officers acted unreasonably: "The search warrant here ordered law

13   enforcement to search buildings that were locked. The officers determined that the safest

14   and most effective way to do so was by breaking the doors. Brutsche offers nothing other

15   than his personal belief to support characterizing the decision by the officers as unreasonable

16   under the circumstances." <u>Brutsche</u>, 2006 WL 1980216, at *2. Plaintiffs may be asserting a

17   different claim in their federal cause of action; however, the state court has already

18   determined the factual issue of whether the police officers were unreasonable in their search,

19   which forms the basis of the Plaintiffs' Fourth Amendment claim. Since the state court

20   previously decided that the officers have not acted unreasonably, the issue cannot be

21   relitigated in this action. <u>See</u> 28 U.S.C. § 1738 (2000) (mandating that federal courts give

22   "judicial proceedings of any court of any such State . . . the same full faith and credit in

23   every court within the United States . . . as they have by law or usage in the courts of such

24    State. . ."). Accordingly, because the state court held that no evidence existed to show that

25   the execution of the warrant was unreasonable, this Court is precluded from considering the

26   same issue.

1

### 3.      Final Judgment on the Merits

2        Plaintiffs argue that because the case is still pending in the Washington State Supreme

3   Court there has not been a final judgment on the merits.  Pls.' Resp. at 23.  Additionally,

4   Plaintiffs contend that "under federal law, the superior court's summary judgment order

5   would not constitute a final judgment on the merits." Id.  Both these arguments are without

6   merit.  "A grant of summary judgment constitutes a final judgment on the merits and has the

7   same preclusive effect as a full trial on the issue." Lee v. Ferryman, 88 Wn. App. 613, 622

8   (1997); see also Kourtis v. Cameron, 419 F.3d 989, 996 n.4 (9th Cir. 2005) (recognizing that

9   summary judgment is a final judgment on the merits for preclusion purposes). "[A]n appeal

10  does not suspend or negate the res judicata or collateral estoppel aspects of a judgment

11  entered after trial in the superior courts." Nielson v. Spanaway Gen. Med. Clinic, Inc., 135

12  Wn.2d 255, 264 (1998).  Accordingly, the Washington State Court of Appeals decision, in

13  affirming the trial court's grant of summary judgment, constituted a final judgment on the

14  merits.

15

### 4.      Must be a Party or in Privity

16       Plaintiffs did not join King County and the City of Kent in their claim regarding the

17  execution of the warrant.  Compl. at ¶ 215.  According to the Response brief "[t]he eleventh

18  cause of action in the complaint alleges state law claims of property damage, trespass, and/or

19  waste.  The complaint alleges liability of the defendant cities and port under the doctrine of

20  respondeat superior." Pls.' Resp. at 23.  There is no dispute that the cities of Federal Way,

21  Auburn, Renton, Tukwila, or the Port of Seattle were not part of the previous state cause of

22  action.  According to the test set out in Malland, "the party against whom the plea is asserted

23  must have been a party to or in privity with a party to the prior adjudication." 103 Wn.2d at

24  489.  Neither party provide support for their contentions regarding whether or not the

25  Defendants are in privity with King County and the City of Kent for the purposes of

26

1  collateral estoppel.  Moreover neither party discusses the doctrine of nonmutual collateral

2  estoppel in Washington.

3                    **5.      Must not work an injustice**

4         The last element, requiring that the application of collateral estoppel must not work an

5  injustice, is also ignored by both parties.  The determination of this element depends on

6  "whether the parties to the earlier proceeding received a full and fair hearing on the issue in

7  question."  <u>Clark v. Baines</u>, 150 Wn.2d 905, 913 (2004); <u>see</u> <u>also</u> <u>Nat'l Union Fire Ins. Co.</u>

8  <u>of Pittsburgh v. Northwest Youth Servs.</u>, 97 Wn. App. 226, 233–34 (1999) (determining that

9  an opportunity to litigate an issue in a previous action satisfies the collateral estoppel test).

10        Accordingly, the Court DENIES WITHOUT PREJUDICE Defendants' Motion to

11 Dismiss Plaintiffs' eleventh cause of action regarding property damage, trespass, and waste.[12]

12 <u>C</u>ONCLUSION

13        The Court enters the following Order:

14        1.      The Court GRANTS IN PART and DENIES IN PART Defendants' Motion to

15 Dismiss Plaintiffs' first cause of action, the Fourth Amendment claims of unreasonable

16 seizures.  The Court DENIES Defendants' Motion to Dismiss Officers Torre, Sjolin, and

17 Jordan from Plaintiffs' first cause of action.  The Court GRANTS Defendants' Motion to

18 Dismiss Officers Adam, Rankin, Sidell, Villa, Cline, and Courtney from Plaintiffs' first

19 cause of action.  The Court DISMISSES Officers Adam, Rankin, Sidell, Villa, Cline, and

20 Courtney from Plaintiffs' first cause of action.

21        2.      The Court GRANTS Defendants' Motion to Dismiss the uninvolved officers

22 from Plaintiffs' fourth cause of action, the Fourteenth Amendment due process claims.  The

23 

24 [12] At trial both parties should be prepared to discuss relevant cases on collateral estoppel
   relating to the third and fourth elements.  Specifically, regarding the privity analysis the
25 parties should focus on <u>Blonder Tongue Labs., Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313
   (1971), <u>Nielson v. Spanaway Gen. Med. Clinic, Inc.</u>, 135 Wn.2d 255 (1998), <u>Barlindal v.</u>
26 <u>City of Bonney Lake</u>, 84 Wn. App. 135 (1996), and <u>Lucas v. Velinkanje</u>, 2 Wn. App. 888
   (1970), as well as other cases that may be relevant.

ORDER   21–

1    Court DISMISSES Officers Torre, Adam, Courtney, Rankin, Sjolin, Jordan, Villa, Sidell and

2    Cline from Plaintiffs' fourth cause of action.

3          3.      The Court STRIKES as MOOT Defendants' Motion to Dismiss Plaintiffs'

4    eighth and ninth causes of action, the claims of infliction of emotional distress and assault

5    and battery, docket no. 60.

6          4.      The Court DENIES WITHOUT PREJUDICE Defendants' Motion to Dismiss

7    Plaintiffs' eleventh cause of action, the claims for property damage, trespass, and waste,

8    docket no. 60.

9          5.      Except as granted or stricken, the Court DENIES the Motion to Dismiss.

10

11    IT IS SO ORDERED.

12    DATED this 14th day of December, 2006.

13

14    _____

      Thomas S. Zilly

15    United States District Judge

16

17

18

19

20

21

22

23

24

25

26

ORDER   22–