UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE ESTATE OF JAMES F. BRUTSCHE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF FEDERAL WAY, et al., <br><br> Defendants. | No. C05-1538Z <br><br> ORDER |

This matter comes before the Court on Defendants City of Federal Way, City of Auburn, City of Kent, City of Renton, City of Tukwila, and the Port of Seattle ("the Cities' and the Port's") Motion for Summary Judgment Re: Plaintiffs' 42 U.S.C. § 1983 Claims and State Law Claims, docket no. 134, as to the federal claims.[1] The Court DENIES IN PART, GRANTS IN PART, and DEFERS IN PART the motion as to the federal claims, as outlined below.

//

//

---

[1] After oral argument on April 6, 2007, the Court GRANTED IN PART the motion and DISMISSED with prejudice Plaintiffs' state law claims against the Cities and the Port, which were set forth in Plaintiffs' Seventh, Eighth, Tenth and Eleventh Causes of Action, for the reasons stated on the record in open court. See Minutes, docket no. 187.

ORDER  1–

# BACKGROUND

The Cities and the Port have formed a SWAT team, called the Valley Special Response Team, or "VSRT," by Interlocal Cooperative Agreement. Muenster Decl., docket no. 149, Ex. G (Interlocal Cooperative Agreement). One of the purposes of the SWAT team is to serve "narcotic/high risk search warrants." Id., Ex. G at 734. The SWAT team is governed by an executive board whose members are the police chief, or his/her designee, from each participating jurisdiction. Id., Ex. G at 735. This board develops the SWAT team's policies, which take precedence over any conflicting policies of an individual jurisdiction. Id., Ex. G at 736.

This case arises from the SWAT team's execution of a search warrant on July 10, 2003 on the Brutsche property located at 426 Naden Avenue, in Kent, Washington, and the resulting injuries to James Frederick Brutsche ("Jim Brutsche"). Muenster Decl., docket no. 71, Ex. E (Search Warrant). Jim Brutsche resided in a mobile home on the property at the time. Further factual background is presented in the Court's Order, docket no. 113, at 1-4, and in the Discussion Section below.

# DISCUSSION

## I. Summary Judgment Standard

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

## II. Fourth Cause of Action: Damages to the Parent/Child Relationship

Plaintiffs allege that Defendants violated Jim Brutsche's and his parents' Fourteenth Amendment substantive due process rights. First Am. Compl. ¶¶ 159-169. The Court previously granted summary judgment on Mr. Brutsche's parents' substantive due process claims as alleged against certain "uninvolved" officers – namely, Rankin, Sidell, Villa,

ORDER 2–

Courtney, and Cline[2] – because Plaintiffs failed to provide any evidence that the officers had any "purpose to cause harm unrelated to the legitimate object of arrest." See Order, docket no. 113, at 14-16 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 836 (1998)). At the pretrial conference and with Plaintiffs' consent, the Court dismissed the Estate's substantive due process claims as alleged against these same officers based on the same rationale. Minutes, docket no. 188.

In support of the present motion for summary judgment, the Cities and the Port argue that Plaintiffs have similarly failed to provide any evidence that the Cities and the Port had any purpose to cause harm unrelated to the legitimate object of arrest. Plaintiffs, however, do not have to prove specific intent on the part of a municipality to achieve liability under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). See Biberdorf v. Oregon, 243 F. Supp. 2d 1145, 1155-56 (D. Ore. 2002). Lewis explicitly did not address the issue of municipal liability. Lewis, 523 U.S. at 838 n.2 ("the issue of municipal liability is not before us"); see also Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 372-73 (9th Cir. 1998) (applying Lewis's "purpose to commit harm" standard to officers, not municipalities). The Cities and the Port failed to provide any case law in which a plaintiff was required to show a purpose to cause harm on the part of a municipality in order to achieve Monell liability.

Accordingly, the Court DENIES the Cities' and the Port's summary judgment motion as to the Fourth Cause of Action, and Plaintiffs' substantive due process claims against the Cities and the Port remain for trial.

**III.   Sixth Cause of Action: Municipal Liability for Defendant Cities and Port**

Plaintiffs allege that the Cities and the Port are liable under 42 U.S.C. § 1983

---

[2] The Court also dismissed the claim against Officer Adam, but later reinstated the claim against Officer Adam on Plaintiffs' motion for reconsideration. See Order, docket no. 113, at 16; Order, docket no. 131, at 4-5.

ORDER   3–

("Section 1983") because their policies, practices, and customs caused the unreasonable use of force in the execution of a narcotics search warrant and because the police chiefs ratified the officers' unreasonable use of force after the raid and failed to take disciplinary action against any officers, thus violating Plaintiffs' Fourth Amendment rights.  First Am. Compl. ¶¶ 182-194.  "[T]he use of force to effect an arrest is subject to the Fourth Amendment's prohibition on unreasonable seizures."  Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir. 1994).

In their opening brief, the Cities and the Port argue that the officers were adequately trained and that Plaintiffs have failed to show deliberate indifference on the part of the Cities and the Port.  Plaintiffs respond that this is not a "deliberate indifference" failure to train case and contend that the Cities and the Port "blur theories of § 1983 municipal liability which in fact are analytically distinct."  Pls.' Opp'n, docket no. 148, at 3, 16.  Plaintiffs correctly assert that "deliberate indifference" applies in failure to train, supervise and screen cases, but not in cases where the municipality acts affirmatively in adopting a policy, makes a decision to deploy the SWAT team, or ratifies the SWAT team's actions after the fact, as alleged in this case.  See Biberdorf v. Oregon, 243 F. Supp. 2d at 1154-56 ("deliberate indifference is a critical element when the policy at issue is one of omission or failure to act" but is not an element in Section 1983 cases where a plaintiff is attacking an affirmative policy or action).  The Court concludes that deliberate indifference is not applicable to Plaintiffs' Section 1983 claim against the Cities and the Port.

Here, the reasonableness of the officers' use of force on Mr. Brutsche is at issue, and the municipalities which employ the officers are being sued under Section 1983. Municipalities are "persons" subject to suit under 42 U.S.C. § 1983.  See Monell, 436 U.S. at 691 n.55.  However, "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  Id. at 691 (emphasis in original).  Section 1983 "imposes liability on a government that, under color of some official policy, 'causes' an employee to

ORDER   4–

violate another's constitutional rights." Id. "City policy 'need only cause the constitutional violation; it need not be unconstitutional per se.'" Watkins v. City of Oakland, 145 F.3d 1087, 1092 (9th Cir. 1998) (quoting Chew v. Gates, 27 F.3d at 1444). "City policy 'causes' an injury where it is 'the moving force' behind the constitutional violation." Chew v. Gates, 27 F.3d at 1444 (quoting Monell, 436 U.S. at 694). To prevail at trial, Plaintiffs need to "show that the specific use of force . . . violated the Constitution, and that city policy caused the unconstitutional application of force in this instance." Chew v. Gates, 27 F.3d at 1444 n.12. "Where a plaintiff claims that the municipality has not directly inflicted injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable for the actions of its employee." Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 405 (1997).

Plaintiffs assert that the SWAT team's policies, not the individual municipalities' policies, caused the unreasonable use of force against Jim Brutsche. The Cities and the Port do not dispute that the chiefs of police of each defendant city are the final policymakers for their respective cities in making the SWAT team's policies. Thus, it is undisputed that the SWAT team's policies constitute official policies of the Cities and the Port, and the issue before the Court is whether the SWAT team's policies caused (i.e., were the moving force behind) the alleged unreasonable use of force against Jim Brutsche. Plaintiffs contend the SWAT team's policies give rise to Monell liability in three ways.

First, Plaintiffs argue that the SWAT team's policies caused the unreasonable use of force because they call for the deployment of a SWAT team in narcotic search warrants, regardless of the quantity of drugs suspected to be involved and regardless of the fact that the police have no information that any weapons are present on the property to be searched. The specific policy at issue here is the SWAT team's operation manual's provision for "Dynamic Warrant Service," which deploys the SWAT team for "high-risk" warrants. Muenster Decl.,

ORDER   5–

docket no. 150, Ex. H. Warrants are categorized as "high-risk" based on the following seven factors:

"High-Risk"

a) The circumstances are unusual and beyond the capabilities of normal warrant service.
b) The location is heavily fortified.
c) Shooters are known to be present.
d) Weapons are present and being used (high power, high volume, automatic, etc.).
e) Gang members are known to be present.
f) The propensity for violence exists.
g) Dynamic entry is necessary to prevent destruction of evidence.

Muenster Decl., docket no. 150, Ex. H (VSRT's "Dynamic Warrant Service" policy) at 1, Index page 8058. Chief James Kelly testified that contrary to Plaintiffs' assertion, the presence of weapons is a consideration in the risk analysis. Suppl. Gavery Decl., docket no. 153, Ex. F (Kelly Dep.) at 30:6-7. This is plain from the above-listed factors. Chief Kelly also testified in his deposition that the SWAT team could be deployed even if the police have no information that the person has weapons, depending on the other factors. Id. at 30:20-31:7. He explained that a numerical count of these factors does not automatically mean deployment, and that alternatives are explored. Id. at 31:24-32:6.

In the present case, the parties dispute whether the warrant should have been classified as "high-risk." Plaintiffs argue that it was unreasonable to deploy the SWAT team to serve this warrant based merely on two $20 controlled buys of a controlled substance (i.e., methamphetamines). See Muenster Decl., docket no. 149, Ex. K (Danaher Decl.) at 5. The SWAT team's Dynamic Warrant Service policy, however, allows for other considerations to be taken into account in assessing risk, and other considerations were, in fact, taken into account. See, e.g., Suppl. Gavery Decl., docket no. 153, Ex. B (Statement of Detective David McKenzie) at 867 (suspecting the manufacture of methamphetamines); id. Ex. C (Bridgman Dep.) at 14-17 (testifying to prior controlled buys of narcotics by King County Detectives Bridgman and Herndon and prior search warrant on the Brutsche property); Ex. E

ORDER   6–

(Villa Decl.) ¶¶ 5-6 (basing high risk status on the "logistical layout of the property" and "the known lifestyle of those involved in the methamphetamine trade"); id. Ex. D (Majak Decl.) ¶ 4 (noting that "persons involved in the methamphetamine trade are typically paranoid, irrational and are often armed to protect themselves from other criminals"); id. Ex. E (Villa Decl.) ¶ 7 (noting that Valley Narcotics Enforcement Team ("VNET") detectives had reported that the property owner allowed multiple suspected drug users to sleep/live throughout the property).

The Court need not resolve this dispute. The Court's task on summary judgment is to determine whether there is any evidence that the SWAT team's Dynamic Warrant Service policy caused the alleged unreasonable use of force against Jim Brutsche, not to determine whether the SWAT team's deployment was reasonable. Plaintiffs have failed to provide any evidence that Jim Brutsche was injured by any reason specific to the SWAT team's policies and procedures. Because the Dynamic Service Warrant policy, which was used to decide to deploy the SWAT team in this case, cannot be considered the cause of, or the moving force behind, Jim Brutsche's injuries, the Court GRANTS IN PART the Cities' and the Port's motion for summary judgment, and DISMISSES with prejudice the Sixth Cause of Action to the extent that it is based on the VSRT's Dynamic Warrant Service policy.

Second, Plaintiffs argue that the SWAT team's policies violate the standards in Graham v. Connor, 490 U.S. 386, 396 (1989). Graham discusses standards for determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment:

> [This determination] requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . [T]he test of reasonableness under the Fourth Amendment . . . requires careful attention to the facts and circumstances of each particular case, including *the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight*. . . . The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather

ORDER  7–

> than with the 20/20 vision of hindsight. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

490 U.S. at 396-97 (internal quotations and citations omitted) (emphasis added).

Plaintiffs have not identified any SWAT team policy that violated <u>Graham</u> and caused an unreasonable use of force, but they appear to be attacking the Valley Special Response Team's "Use of Force" policy. Muenster Decl., docket no. 149, Ex. I. The VSRT's Use of Force policy states, in pertinent part, as follows:

> NEED: Members shall use a reasonable amount of force necessary to accomplish the arrest, overcome resistance to arrest, defend themselves or others from harm, or to control a situation. The degree of force used should be in direct relationship to the amount of resistance perceived by the member, or the *imminent* threat the person poses to the member or others.

<u>Id.</u> at Index page 4906 (emphasis added). Plaintiffs assert that this policy does not consider the <u>Graham</u> "severity of the crime" factor because the quantity of drugs suspected to be found is not a required consideration of the policy. Plaintiffs have provided no evidence that the quantity of drugs should be the basis for determining the severity of the crime and the concomitant need for force. Furthermore, the severity of the crime, as well as the other <u>Graham</u> factors, are not requirements for every use of force policy, but rather are considerations for a court in determining the reasonableness of force ex post facto.

Plaintiffs also assert that this policy impermissibly considers "imminent" threats to officers, which, they argue, is different and broader than the "immediate" threat recited in <u>Graham</u>. Even if the Court is to accept that "imminent" does not have a time limitation, as Plaintiffs argue was testified to by Lieutenant Villa, Plaintiffs have provided no evidence that the policy's use of "imminent" rather than "immediate" had an effect on the officers' use of force against Jim Brutsche. Because Plaintiffs cannot prove that the "imminent" language in the VSRT's Use of Force policy caused, or was the moving force behind, Jim Brutsche's injuries, the Court GRANTS IN PART the Cities' and the Port's motion for summary

ORDER   8–

judgment, and DISMISSES with prejudice the Sixth Cause of Action to the extent that it is based on the VSRT's Use of Force policy.

Third, Plaintiffs argue that the SWAT team's policies violate the Fourth Amendment's "knock and wait" requirement, and they rely on Richards v. Wisconsin, 520 U.S. 385 (1997), and Wilson v. Arkansas, 514 U.S. 927 (1995). See Pls.' Opp'n at 20.  These cases discuss how the Fourth Amendment protects against unreasonable searches and seizures by requiring that, absent "countervailing law enforcement interests," an officer must knock on the door and announce his presence before using force to gain entry.  Wilson, 514 U.S. at 929, 934, 936 (holding that the "common law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment"); see also Richards, 520 U.S. at 387. The knock-and-announce requirement could give way "under circumstances presenting a threat of physical violence" or "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given." Wilson, 514 U.S. at 936; see also Richards, 520 U.S. at 394 ("In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.").  "[L]ower courts [have] the task of determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment." Wilson, 514 U.S. at 396; see also Richards, 520 U.S. at 394 ("[I]t is the duty of a court . . . to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement.").  The showing of exigent circumstances "is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." Richards, 520 U.S. at 394-95.

Here, Plaintiffs argue that the VSRT's Operations Manual's "Verbal Commands" policy does not comply with the Fourth Amendment.  In particular, Plaintiffs point to the

ORDER   9–

following language in the policy for entering buildings: "A designated officer will announce clearly and loudly 'POLICE, SEARCH WARRANT, GET DOWN' *as the team enters*." Muenster Decl., docket 150, Ex. H (VSRT's Verbal Commands) at 1, Index page 8047 (emphasis added). On its face, however, the Verbal Commands policy does not dispense with the knock and announce requirement. See id. at 1-2, Index pages 8047-8048 (referring to plans that call for "knock and announce" entries). Indeed, the plan in this case included a knock and announce element. See Muenster Decl., docket no. 71, Ex. I (VSRT Operations Order) at Index page 986 (SWAT team members "1-8 will stack on the south 1 side door, *knock and announce*, breach front door if necessary, deploy NFDD, enter and clear residence") (emphasis added). This case does not involve a policy with a per se exception to the knock-and-announce requirement. Cf. Richards v. Wisconsin, 520 U.S. 385, 391-94 (1997) (rejecting the Wisconsin court's blanket exception to the knock-and-announce requirement for felony drug investigations). Accordingly, the Verbal Commands policy does not violate the Fourth Amendment by eliminating the knock-and-announce requirement.[3]

The Court's inquiry does not stop here. Plaintiffs have characterized the Fourth Amendment requirement as a "knock and wait" rather than a "knock and announce" requirement, and Plaintiffs have asserted that the Verbal Commands policy does not comply with the Fourth Amendment because it allows simultaneous announcement and entry. The Richards and Wilson cases relied upon by Plaintiffs do not address the need for officers to wait after knocking and announcing their presence. Plaintiffs' entire "knock and wait"

---

[3] Whether or not the officers in this case knocked and announced their presence in conformity with the Fourth Amendment is a factual issue disputed by the parties, and one for the jury to decide in connection with determining the liability of the officers. Compare Suppl. Decl. Gavery, docket no. 153, Ex. G (Philips Dep.) at 48-49 (witness inside mobile home testifying that the police made four announcements over a loudspeaker, "Kent SWAT Police. Come out with your hands in the air," over a ten second period prior to entry); Muenster Decl., docket no. 71, Ex. Y (Ulrich Dep.) at 15-17, 24-26 (witness inside mobile home not testifying to any knocking or announcements when explaining how he knew the police were present). However, the Court concludes that this factual issue is not relevant to the knock and announce claim against the municipalities.

ORDER   10–

argument is set forth in four sentences in their brief in opposition to Defendants' motion for summary judgment, and it is not fully developed. See Pls.' Opp'n at 20. At oral argument, Plaintiffs further developed their "knock and wait" argument, asserting that Jim Brutsche's injuries would not have occurred had the officers waited a reasonable time after announcing their presence. But Plaintiffs still failed to cite any relevant case law, such as United States v. Banks, 540 U.S. 31 (2003),[4] to support their contention that the Fourth Amendment requires officers to wait after announcing their presence. Defendants also failed to apply United States v. Banks to support their contention that the SWAT team was justified in dispensing with the "knock and wait" requirement.[5] See Defs.' Reply at 8. Because the issues have not been adequately developed by either party, the Court DEFERS IN PART the Cities' and the Port's motion for summary judgment on the "reasonable wait time" issue.

In addition to Plaintiffs' contentions that the SWAT team's policies give rise to Monell liability, Plaintiffs argue that the Cities and the Port are liable under Section 1983 for the unreasonable use of force on Jim Brutsche because the executive board ratified the officers' use of force by approving of the actions of the SWAT team after the raid took place. The Ninth Circuit summarizes the ratification doctrine as follows:

> The ratification doctrine, asserted as a basis for municipal liability, originated in St. Louis v. Praprotnik, 485 U.S. 112 (1988). There, a plurality of the Supreme Court stated that '[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.' Id. at 127. But the sentence from Praprotnik must be read in context. The Court held in Praprotnik that to establish municipal liability, a plaintiff must 'prove [ ] the existence of an unconstitutional municipal policy.' Id. at 128. A single

---

[4] United States v. Banks addressed the issue of "how to go about applying the standard of reasonableness to the length of time police with a warrant must wait before entering without permission after knocking and announcing their intent in a felony case," and concluded that the reasonableness of the wait time should be assessed using a "totality of the circumstances" analysis. Banks, 540 U.S. at 35, 41.

[5] As with the knock and announce issue, the facts need to be developed at trial as to whether and for how long the officers waited after announcing their presence and authority, and as to whether exigent circumstances were present.

ORDER   11–

> decision by a municipal policymaker 'may be sufficient to trigger section 1983 liability under <u>Monell</u>, even though the decision is not intended to govern future situations,' <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1347 (9th Cir. 1992) (citing <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-81 (1986)), but the plaintiff must show that the triggering decision was the product of a 'conscious, affirmative choice' to ratify the conduct in question. <u>Gillette</u>, 979 F.2d at 1347. In the present case, Haugen has made no such showing. . . . [H]ere there are no facts in the record that suggest that the single failure to discipline Haugen rises to the level of such a ratification. <u>See</u>, <u>e.g.</u>, <u>Santiago v. Fenton</u>, 891 F.2d 373, 382 (1st Cir. 1989) (refusing to hold that the 'failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under <u>Monell</u>'). The City of Puyallup and the Puyallup Police Department are therefore entitled to summary judgment.

<u>Haugen v. Brosseau</u>, 339 F.3d 857, 875 (9th Cir. 2003), <u>rev'd on other grounds</u>, 543 U.S. 194 (2004). Plaintiffs assert, without any evidentiary citations, that ". . . the executive board of the SWAT team reviewed the deployment of the SWAT team in this case at its executive board meeting after the raid took place, and approved of the same. Chief Kelly testified that the board typically inquires into whether there was property destruction or injury to officers or civilians." Pls.' Opp'n at 16. Although the Cities and the Port do not contest these facts, <u>see</u> Defendants' Reply at 9, Plaintiffs have failed to show that the VSRT's executive board made a "conscious, affirmative choice" to ratify the use of force in question. <u>See</u> <u>Haugen</u>, 339 F.3d at 875. Moreover, as in <u>Haugen</u>, there are no facts in the record that suggest that the single failure to discipline the officers who injured Jim Brutsche rises to the level of such a ratification. Accordingly, the Court GRANTS IN PART the Cities' and the Port's motion for summary judgment, and DISMISSES with prejudice the Sixth Cause of Action to the extent that it is based on the ratification doctrine.

## CONCLUSION

The Court DENIES IN PART, GRANTS IN PART, and DEFERS IN PART Defendants Cities' and Port's Motion for Summary Judgment, docket no. 134, as to the federal claims, as follows:

(1) The Court DENIES the motion as to Plaintiffs' Fourth "Damage to the Parent/Child Relationship" Cause of Action under 42 U.S.C. § 1983 and the Fourteenth

ORDER  12–

Amendment.  Accordingly, Plaintiffs' substantive due process claims against the Cities and the Port remain for trial.

(2) The Court GRANTS IN PART and DEFERS IN PART the motion as to Plaintiffs' Sixth "Municipal Liability of Defendant Cities and Port" Cause of Action under 42 U.S.C. § 1983 and the Fourth Amendment.  The Court GRANTS IN PART the motion and DISMISSES with prejudice Plaintiffs' Sixth Cause of Action to the extent that it is based on the VSRT's Dynamic Warrant Service policy, the VSRT's Use of Force policy, and the ratification doctrine.  The Court DEFERS IN PART the motion on the "reasonable wait time" issue.

DATED this 11th day of April, 2007.

_____
THOMAS S. ZILLY
United States District Judge

ORDER   13–